Heffernan, J.
In this action plaintiff seeks equitable relief. The facts are quite unusual. Plaintiff and his son, Harry Morris, conducted a mercantile business in the city of Schenectady for a number of years under the trade name of “ S. Morris & Son.” On January 8, 1925, the son met his death in accidentally falling down an elevator shaft while engaged at work. It is conceded that his death arose out of and in the course of his employment. He left surviving his widow, defendant Sadye R. Morris, who is the administratrix of his estate, and his children, the two infant defendants. After the death of the son a dispute arose between his widow and the plaintiff as to the former’s interest in the business. The widow insisted that her husband was a partner. This plaintiff denied, claiming that he was merely an employee receiving a salary of $35 a week and forty per cent of the net profits of the business and that there was due his estate but $1,400. An insurance policy providing for compensation to employees in the mercantile establishment was in force at the time of the son’s death. This policy recited on its face that the father and son were copartners.
On March 9, 1925, plaintiff filed a notice of the accidental death of his son with the State Industrial Commission containing the date, place and cause of death. In the proceedings before the Commission plaintiff, the insurance carrier and the widow Were all *684 represented by counsel. The widow’s representative took the position before that tribunal that her husband was not an employee but a partner in the business. Because of that contention the claim was dismissed on June 29, 1925, without prejudice.
Meanwhile the administratrix and the plaintiff were endeavoring to adjust their differences arising out of the financial interest of the deceased in the business. Several meetings were had between the parties for this purpose. Each was represented by a lawyer. Finally and on August 7, 1925, an adjustment was made. Two instruments, an agreement and a release, were simultaneously prepared, executed and delivered. The agreement provided that plaintiff should pay to the widow as administratrix the sum of $1,400 in cash and $50 each and every week for eight years, in all $22,200. It also contained a clause, which is not material here, for a distribution of the proceeds from the sale of certain real estate when made. It is quite significant that at the suggestion of the widow’s counsel there was incorporated in the agreement the following provision: “It is further understood and agreed that this agreement shall in no manner affect the right of the said Sadye R. Morris as Administratrix, to apply for compensation under the Workmen’s Compensation Act for the death of the said Harry Morris, deceased.” The consideration for this agreement was a release executed by the administratrix to the plaintiff. That release not only absolved plaintiff from all claims and demands which the administratrix had against him by reason of her husband’s interest in the business but it also specifically released him from “ any and all compensation which may be due or become due under the Workmen’s Compensation Law by reason of his son’s death.”
When plaintiff inquired in the presence of all parties why the release as to compensation was not included in the agreement and the effect of the quoted paragraph in such agreement reserving to the administratrix the right to claim compensation, her counsel informed him that his client was unwilling that the agreement should show a release of claims under the Workmen’s Compensation Law because it might embarrass her in the prosecution of her claim before the State Industrial Commission, and that plaintiff could not be prejudiced thereby because he would be protected from any such claims by his release. Although not expressed in so many Words, in view of what subsequently transpired, it is quite obvious what the parties intended. The administratrix made the most advantageous settlement she could .with plaintiff. At the same; time she contemplated a proceeding seeking compensation against the insurance carrier. Plaintiff acquiesced in her desire in the mistaken belief that he was released of all further liability. The *685 lawyer upon whose advice he relied gave his approval. Plaintiff was not advised that the portion of the release which purported to relieve him from liability for workmen’s compensation was not valid in law. (Workmen’s Compensation Law, § 33.)
The weekly payments of $50 which plaintiff obligated himself to make were largely in excess of compensation under the Workmen’s Compensation Law. The proof shows that the maximum benefit to the widow and children under that law amounted to $14,379.67. Aside from the benefits which she was to receive under the agreement plaintiff voluntarily paid to the widow $10,000 out of moneys which he had received as beneficiary on policies of life insurance on the fife of his son.
On December 23, 1925, the widow, through another attorney, on notice to plaintiff, instituted proceedings before the State Industrial Commission in which she sought compensation by reason of her husband’s death. In the proceedings before the Commission the claimant and the insurance carrier were represented by counsel. No one represented the plaintiff. The hearings were closed on February 18, 1926. On May 9, 1927, the Commission made its decision in which it was determined and decided that Harry Morris was an employee of “ S. Morris <fc Son ” and was not covered by the policy issued by the carrier because that protected him as a partner and not as an employee and, therefore, there was no liability on the part of the carrier. An award was made against the plaintiff as a non-insured employer in favor of the widow and the two children. That award was on March 21, 1928, converted into a lump sum amounting to $14,379.67. A judgment was entered on this award in the office of the clerk of Schenectady county in favor of the Commission and against the plaintiff on June 9, 1928. On August 8, 1928, an execution was issued on the judgment and on November 16, 1928, the execution was returned satisfied, the total amount collected representing the award, interest and poundage being $14,965.80. After the payment made by plaintiff for the week ending December 17, 1928, on the advice of bis attorneys, he refused to pay any further sum and instituted this action. The evidence shows that plaintiff prior to this date paid $8,750 on the agreement. It, therefore, appears that there has been paid by and collected from the plaintiff for the benefit of defendants the sum of $23,715.80. The total payments to be made under the agreement amounted to $22,200. Plaintiff has not only paid a sum equivalent to that amount but $1,515.80 in excess thereof. He now asks that the amount of the award made by the Commission and collected from him under the judgment be credited to him on the agreement with the administratrix.
*686 The principal contention of the defendants is that on the facts plaintiff is not entitled to invoke the aid of ? court of equity and that consequently the court has no jurisdicti ;h. to hear and determine the subject-matter in controversy. In taking this position defendants evidently fail to note the important distinction between the general power inherent in a court of equity to decide a cause at all and the question whether it ought to assume jurisdiction. The propriety of affording equitable relief rests in the sound discretion of the court to be exercised according to the circumstances and exigencies of each particular case. Of course this discretion is not an arbitrary one, but must be exercised in accordance with the fixed principles and precedents of equity jurisprudence. Under some circumstances judicial discretion to grant relief becomes judicial duty to grant it. The grace which equity should bestow then becomes a matter of right. The court frequently has, and exercises, a discretion either to retain jurisdiction and afford relief or to remit the parties to their remedy at law. (21 C. J. 34, 35.) Here the plaintiff has no adequate remedy at law. Therefore, the court should not decline to administer justice and enforce rights for which there is no other remedy.
It is also urged that there is no authority for the maintenance of an action of this character. The absence of precedents, or novelty in incident, presents no obstacle to the exercise of the jurisdiction of a court of equity. It is the distinguishing feature of equity jurisprudence that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties. (21 C. J. 35.)
Counsel for defendants stress the argument that the provision in the release whereby the administratrix waived her claim for compensation against plaintiff is void, and that by reason thereof an error of law resulted not to be relieved by a court of equity. The rule that equity will not relieve against a mistake of law has been too often declared to be ignored. That is not the situation here. The administratrix actively participated in the negotiations resulting in the settlement. She was not only a party to the agreement but she assented to the release and accepted the benefits thereunder. In fact the advantages flowing to her under that arrangement were vastly more beneficial than compensation insurance. Although the release was originally void she is now equitably estopped from impeaching it. It is not necessary that an equitable estoppel should rest upon a consideration, or agreement or legal obligation. The courts apply it in accordance with established principles in order that the transactions and dealings may result justly and fairly to the parties concerned with them. It prohibits a person upon *687 principles of honesty and fair and open dealing from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice. (Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 458.) In this instance both parties, erroneously advised by their attorneys, entered into an agreement, basing it on a mistaken assumption of the law relating to it and were thus drawn into an arrangement different from that which they had in contemplation. The mistake of the plaintiff was as to the legal effect of the release. This was brought about largely by the positive assurance of counsel for the administratrix that plaintiff was by the terms thereof relieved of compensation. Under such circumstances it would be inequitable to refuse to afford relief. (Haviland v. Willets, 141 N. Y. 35; Heert v. Cruger, 14 Misc. 508; Smith v. Fisher, 10 id. 625; affd., 87 Hun, 129.)
The rule that equity will not reheve against a mistake of law is subject to the qualification, however, that no one shall be permitted to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties, especially so where the party injured thereby can be relieved without doing injustice to others. (21 C. J. 96.) All the cases which deny a remedy for mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other. (Haviland v. Willets, supra.) Equity always reheves against a mistake of law when the surrounding facts raise an independent equity, as where there has been a mistake of law by one party induced by misrepresentation, deceit or undue influence on the part of the other, or where advantage has been in any way taken of one’s ignorance of law to mislead him, or where there is a relation of trust and confidence, which has been abused, especially if the mistake inures to the advantage of the person whose advice is taken, even though no fraud was intended. (21 C. J. 96, 97.) The act of defendants in repudiating the clause waiving compensation in the release although perhaps innocent in the intention is so injurious to the plaintiff in its consequences that the law declares it to be a fraud. Out of the act the law constructs the fraud, though not tainted with actual fraud.
The rules of equity are susceptible of the necessary expansion to reach new conditions, to apply old principles thereto, in order that the court may make the adjudication which conscience commands. Courts of equity are not so incompetent or so powerless as to be unable to cope with the ingenuity of the cunning and the astute in devising new forms of wrong.
Plaintiff is entitled to the relief prayed for, but under the circumstances, without costs.