MARTHA ANNA TODD FORBES, Appellant, v. WILKIE TODD and Others, Respondents, Impleaded with PEEKSKILL GARDENS, INC., and Another, Defendants.*

Second Department, April 6, 1934.

* Leave to appeal to Court of Appeals granted, 242 App. Div. 661.

S. *Joseph Oxenberg* [*Irving Kornblum* with him on the brief], for the appellant.

*Sydney A. Syme*, for the respondent.

YOUNG, J.   This action was brought by the plaintiff, as sole heir at law of the deceased grantor, to set aside for fraud a deed executed on the 19th day of May, 1909, by William Todd and Annie E. Todd, the father and mother of this plaintiff.   The grantees mentioned in this deed were Alpheus and Wilkie Todd, the nephews of William Todd.   Prior to December 4, 1906, William Todd was a bachelor. On that date he married Annie E. Seabury, and the plaintiff is the child of the said William Todd and Annie E. Seabury.   At the time of the marriage, William Todd was sixty years of age and Annie Seabury was about thirty-one years of age.

The farm in question, upon which William Todd resided, is situated on the Crompond road, which extends from Peekskill to Yorktown Heights.   This farm contains eighty-seven acres and lies on both sides of the Crompond road.   Forty-seven acres are south of the road and forty acres are north of the road.   The farm house and other buildings are all located on the north of the Crompond road. The evidence discloses that, on the 10th day of November, 1906, a deed was executed by William Todd, unmarried, to defendants Alpheus Todd and Wilkie Todd, conveying this farm by a full covenant warranty deed.   The consideration mentioned in this deed is one dollar and other good and valuable considerations.   It was also shown that, at the time this deed was executed, Alpheus and Wilkie Todd executed a life lease to William Todd of that portion of the farm to the north of the Crompond road.   This lease, however, was never recorded.   William Todd nevertheless continued to occupy that portion of the farm with his wife, whom he married shortly after the deed was executed; and their daughter, the plaintiff in this action, was born there and lived with her parents on the farm until the death of her father, William Todd, in 1925.   Shortly after this deed was executed, the city of New York began a proceeding to acquire by condemnation about five and one-half acres of land for

right of way to bring water from the Catskill reservoir to New York city. This land was a part of the farm occupied by William Todd on the north side of the Crompond road. Although William Todd was living upon the premises at this time, his life lease had never been recorded, and he was not made a party in the condemnation proceeding. Alpheus Todd and Wilkie Todd, holding the legal title under the deed mentioned, were made parties and they were represented in the proceeding by their attorney, Robert McCord, of Peekskill, who was the attorney who drew the deed from William Todd to Alpheus and Wilkie Todd, already referred to. This proceeding was consummated and an award of $5,500 was made to the two nephews as owners. Robert McCord never informed the city of New York that William Todd had any interest in this land, although he knew it full well, having drawn the life lease to William Todd. He collected the award and turned it over to Alpheus and Wilkie Todd. This was in the summer or fall of 1908. Some time after the award was paid, William Todd was informed of its receipt, and he immediately made a claim therefor of Robert McCord, who told him he was not entitled to it. William Todd, however, was insistent about it, and, finally, demanded not only payment of the award to him, but also the return of the property which he had deeded to the two nephews in 1906, claiming that this deed had been made by him to his nephews with the distinct understanding that they would return it to him at any time he wished. Upon this trial, William Todd was dead. His wife, however, testified at length in regard to this transaction, narrating several conversations which she said occurred between her and Robert McCord. The nephews claimed upon the present trial that this deed of 1906 was executed by William Todd to them shortly before his marriage to his housekeeper, because he wanted the farm kept in the Todd family, which had owned this land and other land in the vicinity for over 100 years. The nephews testified that William Todd spoke to them first about this transfer, and that it was entirely his suggestion that the deed should be made. On the other hand, the plaintiff claimed upon this trial that this deed of 1906 was procured through the efforts of the nephews after they had heard that William Todd was about to marry his housekeeper, and that they procured the deed to save themselves their inheritance, for it is conceded that these nephews were the nearest relatives of William Todd. As to this deed the learned trial justice found that it was executed under the undue influence and counsel and persuasion of Alpheus Todd and Wilkie Todd, and that the transfer was made upon the false and fraudulent representations that the defendants Alpheus and Wilkie Todd would protect the farm so conveyed and would hold title to the

same in name only and for the benefit of said William Todd, and would return the same to said William Todd on demand. When the nephews Alpheus and Wilkie Todd refused to reconvey the property to William Todd and to pay him the aqueduct money (so called), he employed a lawyer of his own for the first time, one Charles Nassau Wells of Peekskill, and instructed him to begin an action for a reconveyance of the farm and to recover the aqueduct money. This was in the fall of 1908. Lawyer Wells was dead at the time of the trial. He had lived in Peekskill for many years, being justice of the peace there, and had his office in the same building in Peekskill with Robert McCord. The evidence shows that, although William Todd was represented by Mr. Wells, Robert McCord was very active in his efforts to effect a compromise between the parties. He wrote a number of letters directly to William Todd. He asked William Todd to come to his office, which he and his wife did on several occasions, and the record does not show that Lawyer Wells was very active in the interests of his client William Todd. The justice at Special Term in his opinion states that it is perfectly apparent that, although William Todd had a lawyer, he did not get any the better of the bargain in the settlement which was had in 1909. Mr. Wells, however, was paid $600 by William Todd for his services. It was the contention of the plaintiff on this trial that in making this settlement William Todd was deceived by Robert McCord, and likewise by his own lawyer, Wells. The evidence on the trial on behalf of the plaintiff shows that Robert McCord advised William Todd that his nephews would not deed back the property to him or turn over the aqueduct money to him unless he made out a new deed and had his wife sign it; that the property belonged to the Todd boys by deed; and that if William Todd and his wife did not comply with their demands they would drive them off the place. There is evidence to show that, after McCord had made this statement to William Todd and his wife, they went to their own lawyer, Wells, and asked him what they should do, and that he agreed with what McCord had said and also told them that he could not do anything further for them; that he had done all he could. McCord, who testified at the trial, denied any such statement as this, but he admitted that, if he had given them such advice, it would have been entirely false, because at this time William Todd had a life lease of that part of the farm upon which he lived, namely, the forty acres on the north of the Crompond road. At all events, at this time the settlement was made. This settlement consisted of Alpheus Todd and Wilkie Todd deeding back the farm to William Todd. This was accomplished by deed dated the 19th day of May, 1909. On the same day, William Todd

and his wife, Annie, retransferred the property to Alpheus Todd and Wilkie Todd, reserving to William Todd a life estate in the forty acres lying north of the Crompond road. At this time, also, Wilkie Todd and Alpheus Todd paid to William Todd $5,000 out of the fund they received from the city of New York in condemnation proceedings.

McCord explained how this sum of $5,000 was arrived at, to wit, that upon computation it was found that this was substantially the amount that William Todd was entitled to as a life tenant of the farm at the time the award was made.

The trial court found as a fact that there was no consideration for this deed, and that the sum of $5,000 was part of the aqueduct award money to which William Todd was entitled.

This seems like rather a strange transaction, under the circumstances. The net result of the settlement was that William Todd had his life estate reserved in the deed rather than in a separate instrument; otherwise, there was no change whatever in the situation from that existing in 1906, when the first deed was given. The $5,000 paid was, as found by the court, the amount to which William Todd was entitled, and formed no consideration for the new deed. It is the contention of the plaintiff that this second deed was the result of fraudulent representations made to William Todd and his wife by Robert McCord and agreed to or acquiesced in by their own attorney, Wells; that the nephews feared that the first deed was fraudulent, as the court has held it to be, and were anxious to get a new deed in which William Todd's wife should join; that the only reason which led William to execute this deed in 1909 was the belief on his part that, if he did not make this deed, the Todd boys had the power to put him off the farm and would do so. The trial judge made a finding that this representation was in fact made by Robert McCord, as attorney for the defendants. This finding is as follows:

" 72. That after said demand for the reconveyance of the aforedescribed premises and the return of the aqueduct award of $5,500 had been refused by the defendants, Wilkie Todd and Alpheus Todd and their attorney, Robert McCord, said Robert McCord as attorney for the defendants, with full knowledge of the fact that William Todd and Annie E. Seabury Todd were represented by an attorney, one Charles N. Wells, a local Justice of the Peace, represented to and advised said William Todd and Annie E. Seabury Todd, his wife, that unless they accepted the sum of $5,000 which he had computed to be the amount of interest upon a life estate alleged to have been granted to said William Todd, that the defendants, Alpheus Todd and Wilkie Todd would put said

William Todd and his wife, Annie E. Seabury Todd and this plaintiff, an infant, then under two years of age, off the homestead whereon they were then living.''

There is evidence justifying this finding. The court also found that Robert McCord, as attorney for the nephews, with knowledge that William Todd had retained Attorney Wells, had numerous conferences with William Todd and his wife when Attorney Wells was not present, for the purpose of inducing William Todd and his wife to accede and acquiesce in the demands of Alpheus and Wilkie Todd; and the court also found that this deed, executed in 1909 by William Todd to the nephews, was without consideration. The court, however, did not make any finding or conclusion that this deed was fraudulent because of such representations. This evidently was because the court believed, as stated in the opinion, that if fraud induced the making of this deed in 1909, William Todd and his wife knew all about it. In this I think the trial court was in error. Of course, William Todd knew that he was giving a new deed in 1909, and that he was getting what was due him out of the aqueduct money; but he evidently believed that he was obliged to give this deed in order to save his life estate, and this representation, if made by McCord, was false, and his attorney, Wells, either was knowingly a party to this fraud or did not know any better. The evidence seems clear that William Todd believed that the advice given him in this respect was true, for he made no further move during his lifetime.

According to the testimony of the plaintiff and her mother, William Todd's wife, they were always of the same opinion until a Mr. Kirk came to see them in 1930, representing the Westchester county park commission, for the purpose of purchasing the Todd farm for the commission; and at that time he informed Mrs. Todd that, according to the title reports, William Todd was the owner of the property and that she as the widow, and the daughter, would naturally succeed him upon his death to the ownership of the property. And Kirk testified to this effect, and said that at that time Mrs. Todd told him that she and her daughter did not own the property. However, after this conversation with Kirk, Martha, the plaintiff here, William Todd's daughter, asked her mother what it was all about and it was then that Mrs. Todd told Martha all about the deed of 1906 and the deed of 1909, and the plaintiff testified that this was the first time that she ever heard that her father had given a deed of the property. When Mr. Kirk called in 1930, the plaintiff and her mother were not living on the farm. They had moved off the place shortly after the death of William Todd in 1925, upon the demand of Alpheus and Wilkie Todd. Soon there-

after, the plaintiff and her mother went to the home of Mr. Holley, one of the plaintiff's attorneys here, and told him of the facts and received his advice, resulting in the commencement of this action.

The trial justice based his decision mainly upon the ground that plaintiff's cause of action, if any existed, was barred by the Statute of Limitations. He so states in his opinion, and as a conclusion of law the decision states that the plaintiff's action is barred by the statute. In my opinion, the trial judge erred in this finding. The fraud here consisted in the false representation, made by McCord and apparently acquiesced in by Wells, that the nephews were in a position to and would put William Todd and his wife off the place if the deed of 1909 was not given. The evidence is sufficient to uphold a finding that they believed this advice to be sound and acted accordingly, and that its falsity was not discovered until 1930, when plaintiff and her mother visited plaintiff's present attorney.

Subdivision 5 of section 48 of the Civil Practice Act states:

" 5. An action to procure a judgment on the ground of fraud. The cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the fact constituting the fraud." (*Weaver* v. *Haviland*, 142 N. Y. 534; *Gates* v. *Andrews*, 37 id. 657; *Sears* v. *Shafer*, 6 id. 268; *Decker* v. *Decker*, 108 id. 128; *Mason* v. *Henry*, 152 id. 529.)

Nor do I see how it can be held that William Todd or the plaintiff here failed to exercise due diligence to discover the fraud. Why should not the advice given by McCord and confirmed by Wells be relied upon? William Todd, of course, was a farmer and knew little of law. It was natural and proper that he should rest on what his own lawyer told him. This plaintiff and her mother acted with dispatch when their suspicions were aroused by what they were told by Kirk, and it was at this time that plaintiff was first informed of the deeds of 1906 and 1909. It is only where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded that a duty of inquiry arises. (*Higgins* v. *Crouse*, 147 N. Y. 411; *Baker* v. *Lever*, 67 id. 304.)

It is suggested that, at most, this was a mistake of law on the part of William Todd — that is, it involved legal advice mistakenly given, and accepted by him — and that, for a mere mistake of law, equity will not relieve; but plainly there was more than a mistake of law involved in the transaction. There was also, if plaintiff's evidence is to be believed — and the court evidently believed it — deceptive and unfair conduct on the part of McCord in giving the false advice. Under such circumstances, it has many times been held that equity will grant relief.

In *Haviland* v. *Willets* (141 N. Y. 35, 50) the court said: " It is equally well settled that where there is a mistake of law on one side, and either positive fraud on the other, or inequitable, unfair and deceptive conduct, which tends to confirm the mistake and conceal the truth, it is the right and duty of equity to award relief. All the cases which deny a remedy for mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other. (*Silliman* v. *Wing*, 7 Hill, 159; *Flynn* v. *Hurd*, 118 N. Y. 26; *Vanderbeck* v. *City of Rochester*, 122 id. 285.) There was in this case evidence of a studious concealment of the precise point essential to the free and intelligent action of the plaintiff by the executor, in whose position and ability some confidence was reposed. * * * Much more should the rule we have asserted apply in a case where the release is utterly without consideration."

The first conclusion of law in the decision is to the effect that the plaintiff is not the real party in interest and cannot maintain this action in her individual name. The plaintiff here is the daughter of William Todd, and his sole heir at law. He died intestate. Any real property that he owned at the time of his death would have descended to his daughter. If the deed of 1909 is void, the title to this land remained in William and at his death went to his heir, the plaintiff in this action, and she could maintain the present action to recover the property which the nephews held by voidable conveyance. (*Valentine* v. *Richards*, 59 Hun, 619; affd., 126 N. Y. 272.) It must be remembered in this connection that plaintiff's father, William Todd, died without discovery of the fraud, and so the cause of action did not accrue during his lifetime.

The respondents contend that the plaintiff is estopped from maintaining this action because she has failed to show that she tendered or made restoration of taxes paid by respondents. Plaintiff, however, has nothing in her possession to restore. The matter of taxes paid will be adjusted upon the accounting. It was shown upon the trial that, in 1926, Wilkie and Alpheus Todd conveyed the portion of the farm mentioned, lying south of the Crompond road, together with other property, to the defendant Peekskill Gardens, Inc. Plaintiff does not claim that she can recover this part of the farm, but demands an accounting from the nephews in respect thereto. This she is entitled to.

The judgment, in so far as appealed from, should be reversed on the law and the facts, with costs, and judgment directed for the plaintiff, with costs, setting aside the deed made by William Todd and his wife, Annie E. Todd, to Alpheus Todd and Wilkie Todd, bearing date the 19th day of May, 1909, excepting that portion of

the property described therein which was conveyed to the Peekskill Gardens, Inc., by Wilkie Todd and wife and Alpheus Todd, dated April 19, 1926, and recorded in the register's office of the county of Westchester on April 22, 1926, in liber 2661 of Conveyances, page 160, and directing defendants Alpheus Todd and Wilkie Todd to account to the plaintiff for the rents and profits thereof and for the proceeds of the sale of the portion of the property sold to the Peekskill Gardens, Inc., above referred to.

LAZANSKY, P. J., and SCUDDER, J., concur; HAGARTY and CARSWELL, JJ., dissent and vote to affirm.

Judgment, in so far as appealed from, reversed on the law and the facts, with costs, and judgment directed for the plaintiff, with costs, in accordance with opinion. Findings of fact and conclusions of law inconsistent with this decision are reversed and new findings will be made in accordance herewith.

Settle order on notice.